UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ERIC J. STIGGLE, SR )
)
-VS- )
) C.A. No. 06-138 S
RICHARD TAMBURINI, )
WILLIAM DEMERS, THOMAS DWYER, )
JARED DeANGELIS, DANIEL PARRILLO)
STEPHEN PELTIER and COLUCCI )

**DEFENDANT JUSTICE OF THE PEACE STEPHEN PELTIER'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS IN LIEU OF AN ANSWER IN ACCORDANCE WITH RULE 12 (B)(6)**

## I. INTRODUCTION

The Plaintiff's complaint makes some vague and unsubstantiated allegations against the Defendant, Stephen Peltier, Justice of the Peace of the State of Rhode Island.

In effect the Plaintiff alleges that certain Johnston Police officers removed money from his pants pocket to pay the fee of the Justice of the Peace. This was allegedly done in the presence of Defendant Peltier. This bare assertion according to the Plaintiff's claim, "contributed to and proximately caused … violations of the Fourth, and Eighth Amendment Rights and the torts of assault and battery, and larceny."

Defendant Stephen Peltier submits that the Plaintiff's claim must fail for the very simple reason that he is entitled to judicial immunity from all claims.

## II. STANDARD OF REVIEW ON MOTION TO DISMISS PURSUANT TO RULE 12 (B)(6)

Under Rule 12(B)(6), a motion for judgment on the pleadings can be made based on failure to state a claim upon which relief can be granted, *Federal Rules of Civil Procedure, Rule 12(B)(6).*

On such a motion, the court is constrained to accept as true the factual allegations contained in the complaint and draw all inferences in the plaintiff's favor. Allaire Corp. v. Okumus, 433 F.3d 248, 249-250 (2d Cir. 2006). A complaint may not be dismissed pursuant to Rule 12 (B)(6) unless it appears beyond a doubt that "the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

**III. JUDICIAL IMMUNITY PROTECTS THE DEFENDANT, STEPHEN PELTIER FROM THE ALLEGED CLAIMS OF THE PLAINTIFF.**

The Plaintiff's claims arise out of his arrest by the Johnston Police Department on or about November 18, 2004.

Following his arrest on that evening the Defendant, Stephen Peltier (Peltier), was called in to the Johnston Police Department in his capacity as a Justice of the Peace for the State of Rhode Island.

As a Justice of the Peace Peltier is permitted to set bail (or not) for those individuals arrested within the confines of Rhode Island.

The establishment of the office of the Justice of the Peace "originates" within the Rhode Island Constitution. Article X of the Constitution of Rhode Island vests the judicial power "in one Supreme Court, and in such inferior courts as the general assembly may, from time to time, ordain and establish (Const. R.I., Art. X, Sec. 1).

Consistent with establishing the judicial power in one Supreme Court, Sec. 7 permits "other towns and the City of Providence" to "elect such number of justices of the peace … The justices shall be commissioned by the governor." (Const. R.I., Art. X, Sec. 7).

From the constitutional authority granted to the General Assembly by virtue of Article X, Section 1, various courts and judicial positions were established within the State of Rhode Island.

Pursuant to the authority granted, the General Assembly in 1938 enacted Public Law 1938 ch. 2602, 51 and G.L. 1938, ch.489, § 14. These public/general laws subsequently were (re) codified into Title 42, Chapter 30 and established the offices of Notaries Public and Justices of the Peace.

Pursuant to R.I.G.L. 42-30-1 et seq. the governor shall appoint" … as many justices of the peace … as he or she may deem expedient;"

The powers of the justices of the peace are set forth in Title 12, Section 10 of the R.I. General Laws and generally permits said justices to take bail in all complaints bailable before a division of the district court and to issue warrants and complaints returnable to the division of the district court. R.I.G.L. § 12-10-2.

In simplest of terms, the judicial nature and powers of the justices of the peace are established and recognized both by the Constitution of Rhode Island and by the General Laws of Rhode Island.

"The doctrine of judicial immunity developed at common law as a shield intended to protect judges from civil suits for damages for actions taken in their judicial capacity." Estate of Sherman v. Almedia, 747 A.2d 470,473 (R.I. 2000), citing Pierson v.Ray, 386

U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed. 2d 288, 294 (1967), and can be traced farther back "to the successful efforts of the King's Bench to ensure the supremacy of the common-law courts." Id, citing Pulliam v. Allen, 466 U.S. 522, 530, 104 S.Ct. 1970, 1974-75, 80 L.Ed. 2d 565, 571 (1984).

In Floyd and Barker, 77 Eng. Rep. 1305 (1607), Lord Justice Coke and his colleagues enunciated the theory upon which the concept of judicial immunity was built:

> "[I]nsomuch as the Judges of the realm have the administration of justice, under the King, to all his subjects, they ought not to be drawn into question for any supposed corruption, which extends to the annihilating of a record, or of any judicial proceedings before them, or tending to the slander of the justice of the King, which will trench to the scandal of the King himself, except it be before the King himself; for they are only to make an account to God and the King, and not to answer to any suggestion in the Star-Chamber."
>
> (Almeida @ 474, citing Pulliam @ 531, quoting Floyd @ 1307)

The fundamental policy underlying the doctrine of judicial immunity was reiterated by the United States Supreme Court in Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646, 649 (1871). Almedia @ 474. In Fisher the court held that "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Id. @ 474.

Courts have consistently held that judicial immunity is an immunity from suit (emphasis added), not just an immunity from an ultimate assessment of damages. Id. Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 288, 116 L.Ed. 2d 9, 14 (1991). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice,

the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id, Mireles, @ 11. Rather, judicial immunity applies despite allegations of malice or corruption because the rule of judicial immunity was not established "for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." Almedia @ 474, citing Pierson 386 U.S. @ 554.

Given the judicial immunity doctrine, there is not set of facts even if true, that the Plaintiff could present that could establish a claim against Defendant, Peltier.

As a result, Plaintiff fails to state a cause of action upon which relief can be granted, and Defendant Peltier's motion to dismiss should be granted.

STEPHEN PELTIER
By his attorney,

*/s/ William C. Dimitri*
WILLIAM C. DIMITRI, ESQ. #3129
462 Broadway
Providence, RI 02909
Tel (401) 273-9092
Fax (401) 331-1898

**CERTIFICATION**

I, the undersigned, do hereby certify that a true copy of the within Memorandum was mailed on the 19th day of October, 2006, to: Eric J. Stiggle, Sr., 245 Whalley Avenue, New Haven, CT 06511 and Louis DeSimone, Esq., Solicitor/ Town of Johnston, Town Hall, 1651 Atwood Avenue, Johnston, RI 02919.

/s/ William C Dimitri