UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ERIC J. STIGGLE,<br><br>*Plaintiff,*<br><br>vs.<br><br>RICHARD TAMBURINI, TOWN OF JOHNSTON, WILLIAM DEMERS, THOMAS DWYER, JARED DEANGELIS, DANIEL PARRILLO, STEPHEN PELTIER, COLUCCI,<br><br>*Defendants.* | C.A. NO. 06-138 S |

**<u>DEFENDANTS' PRETRIAL MEMORANDUM OF LAW</u>**

## I. PARTIES:

A. Plaintiff, Eric J. Stiggle, Pro Se

B. Defendants, Richard Tambarini, Town of Johnston, William Demers, Thomas Dwyer, Jared DeAngelis, Daniel Parrillo, and Michael Colucci, represented by Marc DeSisto, Esq.

It should be noted that the Court granted Defendant Stephen Peltier's Motion to Dismiss. An Order, *Document 43*, was signed on December 26, 2006.

## II. FACTS TO BE PROVEN IN DEFENSE:

On November 18, 2004, Defendant Patrolman Dwyer and Defendant Patrolman Demers were patrolling the parking lot of the Sky View Motor Inn, located at 2880 Hartford Avenue in Johnston, when they observed a 1991 Cadillac bearing CT registration 479-SPG parked unattended, with a door slightly ajar and the interior light illuminated, in front of room number 105. In an attempt to inform the registered owner of the unsecured vehicle, a check of the license plate was entered into the NCIC database. NCIC revealed that the license plate was entered by

the Waterford, CT Police Department as stolen on October 1, 2004. Communications personnel confirmed with the Waterford Police Department that the plate was stolen.

At first, the occupants of room 105 would not answer the door. After several attempts, plaintiff appeared in the window and inquired as to what the police officers were doing. The officers could not see his hands and were concerned about weapons. There was another person, a woman, in the hotel room with the plaintiff. Plaintiff advised the police officers that the vehicle was his vehicle. He stated that the vehicle belonged to him and his "boy" had let him borrow the license plate.

Plaintiff came out of the hotel room. He gave defendant officers his name. Within minutes, a check revealed an active Westerly Police Department arrest warrant for obtaining money under false pretences, and that he was a fugitive from justice out of Connecticut. There were six active Connecticut arrest warrants. The original warrants included charges of first degree felony kidnapping, felony violation of a protective order, third degree assault, second degree felony assault, first degree reckless endangerment, second degree threatening, interference with an officer/resisting arrest, disorderly conduct, and third degree criminal mischief. The plaintiff was out on a $255,000 bond.

Plaintiff's demeanor was defiant, nervous and suspicious. He became verbally abusive when informed that the license plate was reported as stolen out of Waterford, CT, and again when he was advised of the outstanding warrants for his arrest. Plaintiff was taken into custody for receiving stolen goods and based on the outstanding warrants.

After plaintiff's arrest, defendant officers went into the hotel room with the permission of the remaining occupant, a female. She was very cooperative and gave her name to the police.

On his way to the station, plaintiff yelled obscenities, was verbally abusive and attempted to kick out the rear door window of the cruiser with both feet. During processing, plaintiff, at first, refused to provide his fingerprints and personal information. He also cried and continued to yell obscenities and verbal abuse. During the booking process, plaintiff was monitored through an open door of the bathroom while he was washing his hands prior to being fingerprinted. At no time did the plaintiff exhibit any signs of injury.

A conversation between the Johnston Police Department and the Bail Enforcement Agent from Connecticut took place in which the several active arrest warrants from Connecticut relating to the plaintiff were discussed. The Johnston Police Department officers also contacted the Norwich Connecticut Police Department, and confirmed the existence of the Connecticut felony warrants, and the desire of Norwich Police Department to extradite the plaintiff.

The Norwich Police Department stated that the Johnston Police Department should use extreme caution with the plaintiff, and that the plaintiff would attempt to flee, or would feign illness or injury to prevent an arrest. The Norwich Police Department warned that the plaintiff had a history of fleeing, feigning illness and being combative to prevent an arrest. In fact, while incarcerated in the Johnston Police Department holding cell, plaintiff continued to yell and to be verbally abusive.

The plaintiff was arraigned by Justice of the Peace, Stephen Peltier. Plaintiff was remanded to the A.C.I. pending extradition proceedings. Prior to being taken to the A.C.I., plaintiff complained about his health and was taken to Rhode Island Hospital for medical evaluation.

To the best knowledge of these defendants, plaintiff is still under the custody of the State of Connecticut.

**III. WITNESS LIST:**

Defendants Witness List will be conventionally filed at the United States District Court for the State of Rhode Island.

**IV. EXHIBIT LIST:**

Defendants Exhibit List will be conventionally filed at the United States District Court for the State of Rhode Island.

**V. CLAIMS AND DEFENSES:**

The plaintiff is alleging the following claims:

1. First Cause of Action: Unlawful Search Pursuant to 42 U.S.C. §1983 against Defendants Demers, Dwyer, DeAngelis, Parrillo, and Colucci;

2. Second Cause of Action: Excessive Use of Force Pursuant to 42 U.S.C. §1983 and Assault and Battery against Defendant DeAngelis;

3. Third Cause of Action: Denial of Medical Treatment Pursuant to 42 U.S.C. §1983 and Negligence against Defendants Parrillo and Colucci;

4. Fourth Cause of Action: Supervisory Liability Pursuant to 42 U.S.C. 1983 against Defendant Richard Tamburini [Chief of Police];

5. Fifth Cause of Action: Onlooker Liability Pursuant to 42 U.S.C. 1983; against Defendants Demers and Dwyer;

6. Seventh Cause of Action: Supervisory Liability Pursuant to 42 U.S.C. 1983 against Defendant Town of Johnston.

The defendants will defend this action based on a factual defense. Defendants submit that the facts will show that there was no unlawful search, no excessive force was used, plaintiff was not assaulted or battered, plaintiff was not denied medical care, and the defendants were not

negligent in denying medical care. Further, the facts will show defendants are not liable for supervisory liability or onlooker liability. Notwithstanding defendants strong factual defense, defendants may also rely on immunity defenses, if need be.

**VI. DAMAGES:**

Based on a limited discovery response, defendants believe that the plaintiff is claiming emotional distress and pains in his lower back and/or neck. He is also claiming punitive damages.

To date, plaintiff has not provided any medical documentation to support his claims of mental and/or physical injury. An Order, *Document 52,* was signed by Magistrate Judge Hagopian on February 26, 2007, compelling the Production of Documents. Plaintiff filed a Response to Plaintiff's Request for Production, *Document 53*, on March 15, 2007, which included Plaintiff's Response to Defendants' Request for Production. However, it was incomplete, and included no medical records documentation. Therefore, it is difficult to ascertain plaintiff's alleged damages.

**VII. ISSUES:**

1. Did an unlawful search take place?
2. Did the officers deny necessary medical assistance?
3. Did the officers use reasonable force and/or commit assault and battery in arresting and processing the plaintiff?
4. Are the Town of Johnston and Chief Tamburini liable for Supervisory Liability under 28 U.S.C. §1983?
5. Are Defendants Dwyer and Demers liable for Onlookers liability under 28 U.S.C. §1983?

6. Are the defendants immune from the claims of the plaintiff?

## VIII. ARGUMENTS AND DISCUSSION:

### A. Introduction:

Defendants' first defense is factual. Simply put, defendants' dispute plaintiff's rendition of events as outlined in the plaintiff's complaint. As described by the Johnston Police Department officers, all of plaintiff's claims must fail. Further, given the plaintiff's inability to provide any documentation of his physical damages, it is unlikely that he can prove that any alleged physical damages resulted from his arrest and processing by the Johnston Police Department on November 18, 2004.

Notwithstanding defendants' strong factual defense, in the alternative, defendants argue that they are protected by qualified immunity from the claims brought by the plaintiff.

### B. Factual Defense:

#### 1. First Cause of Action-Illegal Search Pursuant to 42 U.S.C. §1983

Plaintiff seeks to maintain a claim that defendants unlawfully entered his hotel room on November 18, 2004. Title 42, section 1983 provides a civil remedy for the deprivation of constitutional rights by anyone acting under the color of law. Plaintiff specifically claims that Defendants Demers, Dwyer, DeAngelis, Parrillo and Collucci entered his room and searched his property. <u>See</u> *Document 21, First Cause of Action*. More specifically, plaintiff states that Defendant DeAngelis obtained a room key and opened his hotel room door. *<u>Id.</u> at Paragraph 21*.

Defendant DeAngelis was not present for the arrest of the plaintiff at the Sky View Motel, and his first involvement with the plaintiff took place at the Johnston Police Station.

Defendants entered the hotel room of the plaintiff after he was arrested, and with the permission of the remaining occupant of the room, a woman who cooperated fully with the police.

Notwithstanding that the defendant officers had permission to enter the hotel room, defendants argue that they were entitled to enter the hotel room to arrest the plaintiff since there were valid outstanding warrants for the arrest of the plaintiff.

The United States Supreme Court has clearly stated that "absent a warrant or exigent circumstances, police cannot enter a home to make an arrest." *Wilson et ex., et al. v. Harry Layne, Deputy U.S.* Marshal, *Etc. et al*., 526 U.S. 603, 610-611 (1999), citing *Payton v. New York,* 445 U.S. 573 (1980). Again, the Court has clearly stated that "[f]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which subject lives when there is reason to believe the suspect is within." *Id.* A hotel room can be analogized as a temporary dwelling of a suspect. *United States v. Beaudeoin, United States v. Champagne*, 362 F.3d 60, 65 (1st Cir. 2004) [1]. There were valid warrants to arrest the plaintiff, so even if they had not been invited to enter the hotel room by the woman, they were entitled to enter to arrest the plaintiff.

Therefore, these defendants submit that the facts will show that they did not unlawfully enter the plaintiff's hotel room.

**2. Second Cause of Action: Excessive Force under 42 U.S.C. 1983 and Assault and Battery**

[1] US Supreme Court certiorari denied by Beaudoin v. United States, 160 L. Ed. 2d 357, 125 S. Ct. 484, 2004 U.S. LEXIS 7428 (U.S., 2004). Vacated by, Remanded by Champagne v. United States, 160 L. Ed. 2d 1009, 125 S. Ct. 1025, 2005 U.S. LEXIS 1079 (U.S., 2005). US Supreme Court certiorari denied by Champagne v. United States, 2005 U.S. LEXIS 7825 (U.S., Oct. 17, 2005)

**a. Excessive Force under 42 U.S.C. §1983**

Plaintiff seeks to maintain a claim for excessive force under 42 U.S.C. §1983. See *Document 21, Second Cause of Action*. There is a three-part test for excessive force claims under *§ 1983*. The plaintiff must show: (1) a significant injury; (2) resulting directly and only from the use of force that was clearly excessive to the need, and (3) the excessiveness of the force was objectively unreasonable. *Reese v. Anderson, 926 F.2d 494, 500 (5th Cir. 1991).* Plaintiff's claim that the officers used excessive force in the course of making an arrest is subject to the objective reasonableness standard governing the Fourth Amendment. *Graham v. Connor, 490 U.S. 386, 388 (1989)*.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight. When judging reasonableness, it must be factored in that "police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation." *Id. at 396*.

In addition, this standard allows for evidence of what is known to the police officer at the time the force is applied. The knowledge of the police officer forms part of the "facts and circumstances attendant to the decision to use the particular degree of force." *See Senra v. Cunningham, 9 F.3d 168 (1st Cir. 1993)*. Here, no significant force was used or needed. The officers will state that only minimal physical force was need for the arrest.

In addition, plaintiff's extensive criminal history, along with the warning from the Norwich Police Department, that the Johnston Police Department should use caution with the plaintiff since he had a history of being combative to avoid arrest and would attempt to flee or

feign illness or injury to prevent an arrest, is indicative that a reasonable amount of force was used to arrest the plaintiff.

**b. Assault and Battery**

Similarly, the facts do not support plaintiff's state law claim of assault and battery. *See Document 21, Second Cause of Action*. Rhode Island law states that battery is "an act that was intended to cause, and does cause, and offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." *Fenwick v. Oberman*, 847 A.2d 852, 855 (R.I. 2004) quoting *Profitt v. Ricci*, 463 A.2d 514, 517 (R.I. 1983). The evidence will not support plaintiff's claim that the defendants are liable for assault and battery upon the person of the plaintiff.

**3. Third Cause of Action: Denial of Medical Care Pursuant to 42 U.S.C. §1983 and Negligence**

**a. Denial of Medical Care Pursuant to 42 U.S.C. 1983**

Plaintiff claims he was denied medical assistance. *See Document 21, Third Cause of Action*. A viable Eighth Amendment claim of denial of medical assistance to "pretrial detainees" requires a showing that the "challenged official action constituted 'deliberate indifference' to a 'serious medical need'". *Mahan et al. v. Plymouth County House of Corrections, et al*., 64 F.3d 14, 17 (1st Cir. 1995), citing *Consolo v. George*, 58 F.3d 791, 793 (1st Cir. 1995); *Bowen v. City of Manchester*, 966 F.2d 13, 17 (1st Cir. 1992). "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention'". *Id.* at 18, citing *Gaudrault v. Municipality of Salem, Mass*., 923 F.2d 203, 208 (1st Cir. 1990, cert. denied, 500 U.S. 956

(1991). "In order to be found 'deliberately indifferent', the prison officials must be shown to have been subjectively aware of a condition requiring their intervention". *Id*.,citing *Farmer v. Brennan*, 128 L.Ed. 2d 811, 114 S. Ct. 1970 (1994). Further, "[o]fficials must intentionally delay or completely deny access to medical care." *Bertram v. Wall, et al*., 2003 U.S. Dist. LEXIS 9379, at *13 (D.R.I. 2003)[2], citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Therefore, the instant plaintiff must meet two requirements, and prove: 1) That his medical needs, while in the custody of the Johnston Police Department, were serious, and, 2) That the police officers were subjectively aware of that condition. The facts of the instant case do not support plaintiff's claims of denial of medical assistance.

Plaintiff's complaint first vaguely states that while at the Johnston Police Department he said he was "in pain and need[ed] medical help" before he was put in a cell. *See Document 21, Plaintiff's Amended Complaint, Paragraph 32*. The facts do not support any indication of serious medical need and that the Johnston Police Department had a subjective awareness of that serious medical need. [3]

Plaintiff later says that while en route to the A.C.I. he "was having chest pains, and began to throw-up again". *Id. at Paragraph 36.* He goes on to state that "the officer who was driving was very nice and told me he would get me medical help, he turned on his emergency lights and drove to a fire station E.M.S. treated me and took me to a hospital by ambulance." *Id.* Plaintiff

[2] *Bertram v. Wall et al*., 2003 U.S.Dist. LEXIS 11453, (D.R.I. 2003), (Magistrate Judge Report and Recommendation that Defendant's Motion for Summary Judgment be granted).
[3] There is a videotape of the plaintiff in his cell at Johnston Police Department. The plaintiff shows no evident serious medical need in the videotape.

admits that he was immediately provided medical treatment.[4] Since plaintiff was provided medical assistance, again, the facts do not support his claim of denial of medical treatment pursuant to 42 U.S.C. §1983.

**b. Negligence**

Plaintiff also alleges that the failure to provide medical treatment constitutes the tort of negligence. See *Document 21, Third Cause of Action*. However, four elements are necessary in order to establish a viable claim of negligence. The elements are: 1) A legally cognizable duty owed; 2) A breach of that duty; 3) Proximate causation between conduct and injury, and 4) Actual loss or damage. *Forest v. Pawtucket Police Dept., 290 F.Supp.2d 215, 233 (D.R.I 2003).*

Factually, as outlined above, plaintiff cannot support his claim of negligent failure to provide medical treatment, since there was no failure to provide medical treatment. The only time that the plaintiff indicated a serious medical need, he was provided medical treatment. Therefore, plaintiff's negligence claim will also fail.

**4. Fourth Cause of Action and Seventh Cause of Action: Supervisory Liability Pursuant to 42 U.S.C. §1983**

Although plaintiff does not specifically state a cause of action for failure to train and/or supervise, in the Fourth Cause of Action, plaintiff alleges that "Defendant Richard Tamburini [Chief of Police] failed to provide an administrative atmosphere which would tend to prevent the occurrence of events as the one [sic] described herein...." See *Document 21, Fourth Cause of Action.* Then, again in the Seventh Cause of Action, plaintiff alleges the "Town of Johnston to provide {sic} an administrative atmosphere which would tend to prevent to prevent the

[4] Defendants were warned by the Norwich Police Department that they should use extreme caution with the plaintiff and that the plaintiff would attempt to feign illness or injury to prevent arrest.

occurrence of events as the one {sic} described herein...." *See Document 21, Seventh Cause of Action*.

In the first instance, this claim is derivative and dependent on the plaintiff proving his substantive claims of illegal search and excessive force. As outlined above, the facts will show that the plaintiff has no valid claims for illegal search and/or excessive force.

In addition, to the extent plaintiff is seeking to maintain claims under *§ 1983* against Defendant Tamburini and the Town of Johnston for failure to properly train, the burden on plaintiff is high. The United States Supreme Court has held that there are only "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton v. Harris*, *489 U.S. 378, 387 (1989).*

In order to maintain a claim against a municipality under *§ 1983,* the plaintiff must demonstrate in the first instance that it was an unlawful, unconstitutional policy, practice or custom that lead to the constitutional deprivation. *Monell vs. City of New York Department of Social Services, 436 US 658 (1978)*. In *City of Canton v. Harris, 489 U.S. 378, 387 (1989),* the Supreme Court clarified the standard and held that the "policy" requirement limiting municipal liability in *§ 1983* cases under *Monell* can be satisfied in municipal "failure to train" cases only (1) where employees of a local government commit a constitutional violation (2) due to a lack of training by municipal policy makers (3) who are "deliberately indifferent" to the need for the training and 4) it was this lack of training that caused the constitutional violation.

This standard thus first requires a constitutional event, *i.e.*, an underlying constitutional violation that the failure to train causes. Bad facts or a single outrageous event is insufficient. Some kind of wrong of constitutional dimension must be present. *Monell, 436 U.S. at 690-91.*

In the instant case, as more fully outlined above, plaintiff has failed in the first instance to demonstrate a violation of decedent's constitutional rights. Thus, plaintiff's § 1983 claim against Defendant Tamburini and the Town of Johnston will likewise fail. *City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point").*

Even if plaintiff is successful in establishing a constitutional deprivation, plaintiff must demonstrate that the defendants were deliberately indifferent in the failure to train. In *City of Canton, 489 U.S. 378, 387 (1989),* the plaintiff had alleged that due to the inadequacy of police training, the City of Canton and its officials violated plaintiff's constitutional right to receive medical attention while in police custody. *Id. at 382*. After the jury ruled in the plaintiff's favor, the city made a motion for judgment notwithstanding the verdict, claiming that a municipality can only be found liable under § 1983 where the policy in place is itself unconstitutional. In rejecting the city's narrow interpretation of § 1983, the Canton Court established the following standard for evaluating valid policies alleged to have been unconstitutionally applied:

> The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to **deliberate indifference** to the rights of persons with whom the police came into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983 . . . . Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality -- a 'policy' as defined by our prior cases -- can a city be liable for such a failure under § 1983. *Id. at 388-89 (emphasis added).*

Thus, for liability to stem from failure to train, the Plaintiff must show an actual policy of inadequate training, where "the need for more or different training is so obvious, and the

inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id. at 390*. Plaintiff must also demonstrate that a municipality *deliberately* chose an inadequate training program. *Id. at 389*.

The "deliberate indifference" standard has been broken down into three elements:

> (1) that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation;
>
> (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and
>
> (3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights.

*Smith v. Town of E. Haven, 2005 U.S. Dist. LEXIS 4544 (D. Conn. 2005) citing Nicholson v. Scoppetta, 344 F.3d 154, 166 (2d Cir. 2003) (citations omitted).*

"Absent any showing of previous harm arising from this training policy, or any evidence of deliberation on the [defendants'] part there is no basis to support the conclusion that a municipality actually chose a policy with deliberate indifference toward the constitutional rights of individuals." *K v. City of S. Portland, 407 F. Supp. 2d 290, 297 (D. Me. 2006).*[5]

Finally, as with all constitutional claims, plaintiff can only succeed on its failure to train claim under *§ 1983* if that failure is the cause or the "moving force" behind the underlying constitutional deprivation. *See City of Canton, 489 U.S. at 388*. A governmental entity "'is only liable when it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights, 503 U.S. 115, 122 (U.S. 1992).* The Supreme Court has employed an "actual

[5] *Aff'd by K. v. City of S.Portland, 2006 U.S. Dist. LEXIS 15370 (D.ME. 2006).*

causation" standard in claims against a municipality for the negligent training and supervision of government officials under *42 U.S.C. § 1983*. *City of Canton, Ohio, 489 U.S. at 390*. That is, in order to maintain a *§ 1983* claim against a municipality, plaintiff must demonstrate that the claimed deficiency "actually causes injury." *Id.* The Supreme Court has described this burden as requiring a showing that "the identified deficiency in a city's training program . . . [is] closely related to the ultimate injury. . . Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id. at 391*. Further, i order to determine if a plaintiff has met this "rigorous standard" of causation, the Court should refer to state tort principles. *Rodriguez-Cirilo v. Garcia, C.A. No. 96-1306 (1st Cir., June 2, 1997); Soto v. Carrasquillo, 878 F.Supp. 324, 331 (D. Puerto Rico 1995).*

Defendants submit that in the instant case, plaintiff will not be able to establish that the alleged failure to train was the result of the Defendant Chief Tamburin's or the Town of Johnston's deliberate indifference or that, in any event that such failure to train caused plaintiff to suffer a constitutional deprivation.

**5. Fifth Cause of Action: Onlooker Liability Pursuant to 42 U.S.C. §1983**

Plaintiff alleges that the actions of Defendants Dwyer and Demers for failure to intervene, and prevent his alleged assault, constituted a violation of his civil rights. *See Document 21, Fifth Cause of Action*. However, the standard for determining the liability of police officers who are present, but, do not commit the act, is whether the police officer failed to prevent the use of excessive force in his presence by another police officer. *Hathaway v. Stone, 687 F.Supp. 708, 712 (D.Mass.1988) (holding that a reasonable officer who saw another officer drag an arrestee from a car, throw her to the ground, and begin to kick her, would realize that*

*he was under a duty to stop the assault).* Further, "an onlooker cannot be charged with section 1983 liability for another's sudden, momentary actions." *Noel v. Town of Plymouth, Mass., 895 F.Supp. 346, 352 (D.Mass. 1995) citing Gaudreault v. Salem, 923 F.2d 203, 207 n. 3 (1st Cir.1990) cert. denied, 500 U.S. 956 (1991).* As explained by the First Circuit, the question becomes whether the defendant officers had a "'realistic opportunity' to prevent an attack." *Gaudreault, 923 F.2d at 207 n. 3.* Where "the attack came quickly and was over in a matter of seconds" the officer cannot be liable for failing to prevent the same. *O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir.1988) ("The three blows were struck in such rapid succession that [the officer standing by] had no realistic opportunity to attempt to prevent them.").*

Notwithstanding defendants' arguments, as outlined above, that no excessive force was employed, and no assault and battery occurred, plaintiff cannot show that Defendant Dwyer and Defendant Demers are liable for the alleged sudden actions of Defendant DeAngelis that allegedly took place in the bathroom at the Johnston Police Department. Plaintiff does not even allege that Defendants Dwyer and Demers were present in the bathroom with the plaintiff and Defendant Deangelis at the time of the alleged assault. *See Document 21, Paragraph 29.* Further, the facts will show that the plaintiff was in the bathroom with an open door being observed at all times.

**C. Qualified Immunity**

Notwithstanding their strong factual defense, defendants will also rely on the qualified immunity defense to the §1983 claims, as well as the state law claims of assault and battery and negligence. It is well-settled that "[q]ualified immunity may exist even though in hindsight a court might determine that the action of the official violated the constitution." *Berthiaume v.*

*Caron, 142 F.3d 12, 15 (1st Cir. 1998) citing Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982); Hatch v. Town of Middletown, 311 F.3d 83, 90 (1st Cir. 2002) citing Pontbriand v. Sundlun, 699 A.2d 856, 867 (R.I. 1997) and Ensey v. Culhane, 727 A.2d 687, 690 (R.I. 1999) (applying qualified immunity to state law claims).* Thus, even if it should ultimately be determined that plaintiff's constitutional rights have been violated, the defendants are relieved from liability by the doctrine of qualified immunity.

The doctrine of qualified immunity emanates from the Supreme Court's pronouncements in *Harlow* where the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow, 457 U.S. at 818.* The purpose behind granting officials such immunity is to allow them to perform their duties and act in areas where clearly established rights are not implicated "with independence and without fear of consequence." *Id. at 819.* Officials, therefore, enjoy "an immunity from suit rather than a mere defense to liability [which] . . . is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).* "In the end, the qualified immunity defense should prevail unless the unlawfulness of the challenged conduct was "apparent" when undertaken. " *Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004)* [6].

The First Circuit has prescribed the following "three-step algorithm" for determining if a party is entitled to qualified immunity:

[6] *Motions ruled upon, claims dismissed by Limone v. United States, 336 F Supp. 2d (D. Mass 2004).*

> [C]onsider (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right. *Id.*

Based on the information and beliefs of the Johnston Police department, and their actions involved in the plaintiff's arrest and booking, the instant municipal defendants did not exceed constitutionally permissible boundaries and even if they had, they could have reasonably believed that the force used was lawful under the circumstances. Objectively reasonable officers faced with the same situation faced by the Johnston Police Department officers, could have believed that their actions throughout the arrest and processing of the plaintiff were reasonable.

With respect to the state law claims, defendants will also argue that, notwithstanding its strong factual defense, they are, again, protected under the qualified immunity doctrine. Although Rhode Island has not yet expressly adopted the federal doctrine of qualified immunity, there have been holdings "reflecting Rhode Island's recognition of a qualified immunity defense under state law analogous to the federal doctrine established by the United States Supreme Court in Harlow v. Fitzgerald." *Hatch v. Town of Middletown*, 311 F.3d, 90 (1st Cir. 2002), referencing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). The First Circuit has allowed that the application of federal qualified immunity doctrine to state law claims is "well grounded in the law of Rhode Island." *Id.* Therefore, the facts of the instant case will show that these defendants are entitled to qualified immunity as to the federal claims as well as the state law claims.

## IX. CONCLUSION:

The facts will show that there was no unlawful search, no excessive force was used, plaintiff was not assaulted or battered, plaintiff was not denied medical care, and the defendants

were not negligent in denying medical care. As a result, the derivative claims of supervisory liability and onlooker liability will also fail. Notwithstanding defendants strong factual defense, qualified immunity protects these defendants from the claims of the plaintiff.

**X. PROPOSED JURY INSTRUCTIONS:**

Defendants Proposed Jury Instructions will be electronically filed under a separate document.

**XI. ESTIMATED TIME OF TRIAL:**

Defendants expect that their case will be presented in one day and that the entire case will take no longer than two days.

Defendants,
By their Attorneys,

/s/ Marc DeSisto

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

/s/ Karen K. Corcoran

Karen K. Corcoran, Esq. (#6877)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906
Phone: (401) 272-4443
Fax: (401) 272-9937
Email: karen@desistolaw.com

C.A. No. 06-138S

CERTIFICATION OF SERVICE

I hereby certify that this document has been filed electronically on April 10, 2007, and is available for viewing and downloading from the ECF system. A true copy of the within was mailed, postage prepaid to:

Eric J. Stiggle, Sr., Pro Se .
170767
Hartford Correctional Institution
177 Weston Street
Hartford, CT 06120

/s/ Karen K. Corcoran